**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Case No. _____ |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| TOWER INTERNATIONAL, INC., THOMAS | : **SECTIONS 14(e), 14(d) AND 20(a) OF** |
| K. BROWN, JAMES CHAPMAN, ALISON | : **THE SECURITIES EXCHANGE ACT** |
| DAVIS-BLAKE, FRANK E. ENGLISH, JR., | : **OF 1934** |
| JAMES C. GOUIN, DEV KAPADIA, MARK | : |
| MALCOLM, TIGER MERGER SUB, INC., | : **JURY TRIAL DEMANDED** |
| and AUTOKINITON US HOLDINGS, INC., | : |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.      This is an action brought by Plaintiff against Tower International, Inc. ("Tower or the "Company") and the members Tower board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Tower by Autokiniton US Holdings, Inc. and its affiliate ("Autokiniton").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Solicitation Statement on Schedule 14D-9 (the "Solicitation Statement") to be filed on August 15, 2019 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Solicitation Statement recommends that Company stockholders tender their shares in support of a proposed transaction whereby Sausalito Acquisition Corp., a wholly-owned subsidiary of Autokiniton will merge with and into Tower (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Tower common share issued and outstanding will be converted into the right to receive $31.00 per share in cash (the "Merger Consideration").

3. Defendants have now asked Tower's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act. Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) Tower's financial projections relied upon by the Company's financial advisors, J.P. Morgan Securities LLC ("J.P. Morgan") and Houlihan Lokey Capital, Inc. ("Houlihan Lokey") in their financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by J.P. Morgan and Houlihan Lokey; and (iii) the sales process. The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act as Tower stockholders need such information in order to tender their shares in support of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the tender offer.

5.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Tower's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.  This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.  Personal jurisdiction exists over each Defendant either because each is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice. Autokiniton is headquartered in New York City.

8.  Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Autokiniton is headquartered in this District.

## PARTIES

9.  Plaintiff is, and has been at all relevant times, the owner of Tower common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Thomas K. Brown has been the Chairman of the Board since 2017 and has served as a member of the Board since 2014.

11. Individual Defendant James Chapman has served as a member of the Board since 2010.

12. Individual Defendant Alison Davis-Blake has served as a member of the Board since 2014.

13. Individual Defendant Frank E. English, Jr. has served as a member of the Board since 2010.

14. Individual Defendant James C. Gouin has been the Company's Chief Executive Officer ("CEO") and a member of the Board since January 2, 2017.

15. Individual Defendant Dev Kapadia has served as a member of the Board since 2007.

16. Individual Defendant Mark Malcolm has served as a member of the Board since 2007, and was previously the Company's President and CEO from August 1, 2007 through August 31, 2016, and CEO from September 1, 2016 through December 31, 2016, when he was succeeded by defendant Gouin.

17. Defendant Tower is incorporated in Delaware and maintains its principal offices at 17672 Laurel Park Drive North, Suite 400E Livonia, Michigan 48152.  The Company's common stock trades on the New York Stock Exchange under the symbol "TOWR."

18. Defendant Tiger Merger Sub, Inc. is a Delaware corporation and a wholly owned subsidiary of Autokiniton US Holdings.

19. Defendant Autokiniton is a Delaware corporation created by KPS Capital Partners to pursue investments in the global automotive supply industry. Autokiniton maintains its principle offices at 485 Lexington Avenue, New York, New York 10017.

20. The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.**     **The Proposed Transaction**

22. Tower manufactures and sells engineered automotive structural metal components and assemblies primarily for original equipment manufacturers. It operates in two segments, North America and Brazil. The company provides body structures and assemblies, including structural metal components, which comprise body pillars, roof rails, and side sills; and Class A surfaces and assemblies that consist of body sides, hoods, doors, fenders, and pickup truck boxes. It also offers lower vehicle frames and structures, such as pickup truck and sport utility vehicle (SUV) full frames, automotive engine and rear suspension cradles, floor pan components, and cross members. In addition, the company offers complex body-in-white assemblies comprising various components and sub-assemblies. Its products have applications in small and large cars, crossovers, pickups, and SUVs. The company was formerly known as Tower Automotive, LLC and changed its name to Tower International, Inc. in October 2010. Tower International, Inc. was founded in 1993 and is headquartered in Livonia, Michigan..

23. On July 12, 2019, the Company and Autokiniton jointly announced the Proposed Transaction:

> NEW BOSTON, Mich. and LIVONIA, Mich., July 12, 2019 /PRNewswire/ -- Autokiniton Global Group ("AGG"), a leading North American supplier of metal-formed components and complex assemblies to the automotive industry, and Tower International, Inc. (NYSE: TOWR), a leading manufacturer of engineered automotive structural metal components and assemblies, today announced they have entered into a definitive agreement for AGG to acquire Tower for $31 per share in cash. AGG is a portfolio company of KPS Capital Partners ("KPS"), a leading global private equity firm with over $5.0 billion of assets under management.

The all-cash transaction represents a 70% premium to Tower's closing stock price on July 11, 2019. Including Tower's debt and pension related liabilities, the total value of the transaction is approximately $900 million.

* * *

The transaction is anticipated to close in September or October of 2019.

**Terms of the Transaction**

Under the terms of the definitive merger agreement, AGG will commence a tender offer no sooner than August 14, 2019 and no later than August 19, 2019 to acquire all of the outstanding shares of common stock of Tower for $31.00 per share in cash. The tender offer will be subject to customary closing conditions, including the tender of at least a majority of the outstanding shares of Tower common stock and the expiration or early termination of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976. Following the closing of the tender offer, a wholly-owned subsidiary of AGG will merge with and into Tower (the "Merger"), with each share of Tower common stock that has not been tendered being converted into the right to receive the same $31.00 per share in cash offered in the tender offer.

The definitive agreement includes a 35 day "go-shop" period, which permits Tower's Board and financial advisor to actively initiate, solicit and consider alternative acquisition proposals. Tower will have the right to terminate the merger agreement to accept a superior proposal subject to the terms and conditions of the merger agreement. There can be no assurance that this 35 day "go-shop" will result in a superior proposal, and Tower does not intend to disclose developments with respect to the solicitation process unless and until the Board makes a determination requiring further disclosure.

Tower will file its quarterly report on Form 10-Q reporting its second quarter financial results but does not intend to host a quarterly earnings call. Additionally, Tower has agreed to forego paying dividends through the consummation of the transaction.

J.P. Morgan Securities LLC is serving as exclusive financial advisor for Tower and rendered a fairness opinion. Houlihan Lokey Capital, Inc. provided an additional fairness opinion for

Tower. Lowenstein Sandler LLP is serving as the legal advisor to Tower. Goldman Sachs & Co. and Bank of America Merrill Lynch, are serving as the financial advisors for AGG and Paul, Weiss, Rifkind, Wharton & Garrison LLP is serving as the legal advisor to AGG.

**Financial Impact to Autokiniton of the Proposed Tower Acquisition**

FY20 Revenue: The transaction is expected to increase Autokiniton's FY20 total revenue by approximately $350 million to $400 million. This estimate reflects a fair value adjustment to reduce unearned revenue and unbilled unearned revenue by approximately 30%, adjustments related to the combined customer base, and inter-company revenue elimination, as required by U.S. GAAP. FY20 Revenue is now expected to be $16.45 billion to $16.65 billion, an increase of 24% to 25% year-over-year.

FY20 non-GAAP operating margin: The transaction is expected to decrease Autokiniton's FY20 non-GAAP operating margin by approximately (75) basis points year-over-year.

FY20 non-GAAP EPS: As discussed further below, guidance updates for GAAP EPS for all periods discussed are not currently available and Autokiniton expects to provide the applicable updates when the transaction has closed and the purchase accounting has been completed. The acquisition is expected to decrease FY20 non-GAAP diluted EPS by approximately ($0.37) to ($0.39). FY20 Non-GAAP EPS is now expected to be $2.51 to $2.53. This estimate assumes fully diluted share count of approximately 900 million, and a non-GAAP tax rate of 22.5%.

FY20 Operating Cash Flow: Operating Cash Flow is now expected to be in the range of 21% to 22% year-over-year.

These estimates assume a close date on or about October 1, 2019, and certain assumptions related to non-GAAP tax rates. Actual results could differ materially based on the actual transaction close date. Autokiniton is not currently able to prepare an accurate forecast for the full year impact of the acquisition on GAAP EPS and will not be able to do so until the purchase accounting is concluded after the transaction closes. The impact on GAAP EPS is expected to be more significant than for non-GAAP EPS due to the additional stock-based compensation charges and the impact of other various non-cash items, including amortization of acquisition-related intangibles and income tax adjustments.

> Non-GAAP Financial Measures: This press release includes information about non-GAAP operating margin, non-GAAP EPS and non-GAAP tax rates (collectively the "non-GAAP financial measures"). The primary purpose of using non-GAAP financial measures is to provide supplemental information that may prove useful to investors who wish to consider the impact of certain non-cash or non-recurring items on the company's operating performance and to enable investors to evaluate the company's results in the same way management does. Non-GAAP operating margin and non-GAAP EPS estimates exclude the impact of the following non-cash items: stock-based compensation, amortization of acquisition-related intangibles, as well as income tax adjustments. The non-GAAP tax rate estimate excludes the tax adjustments and tax consequences associated with the above excluded non-cash expense items. The method used to produce non-GAAP financial measures is not computed according to U.S. generally accepted accounting principles and may differ from the methods used by other companies. Non-GAAP financial measures are not meant to be considered in isolation or as a substitute for comparable GAAP measures and should be read only in conjunction with the company's consolidated financial statements prepared in accordance with GAAP.
>
> **Advisors**
>
> Bank of America Merrill Lynch is serving as exclusive financial advisor to Autokiniton and Wachtell, Lipton, Rosen & Katz and Morrison & Foerster LLP are serving as legal counsel. J.P. Morgan & Co. LLC is serving as exclusive financial advisor to Tower and Cooley LLP is serving as legal counsel.

24.     It is therefore imperative that Tower's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests.

**B.      The Materially Incomplete and Misleading Solicitation Statement**

25.     On August 15, 2019, Tower filed the Solicitation Statement with the SEC in connection with the Proposed Transaction. The Solicitation Statement was furnished to the Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction. The Individual Defendants were obligated to carefully review the

Solicitation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

26. The Solicitation Statement omits material information regarding the Company's financial projections and the valuation analyses performed by J.P. Morgan, the disclosure of which is material because it provides stockholders with a basis to project the future financial performance of the target company, and allows stockholders to better understand the analyses performed by the financial advisor in support of its fairness opinion of the transaction.

27. For the Initial Company Projections and the Updated Company Projections (the "Projections") prepared by Company management for Tower, the Solicitation Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as (1) Adjusted EBITDA and (2) Adjusted EBIT, but fails to disclose: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G. Solicitation Statement 32-33.

28. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the projected terminal values for the companies; (ii) the companies' unlevered free cash flows, including the line items used to calculate them; (iii) the basis for applying a terminal growth rate ranging from 1.5% to 2.5% to the unlevered free cash flows of the Company during the final year of the Updated Company Projections; (iv) the basis

for applying the range of discount rates from 10.25% to 11.25%; (v) the net debt of the Company as of March 31, 2019. Solicitation Statement at 44.

29. With respect to Houlihan Lokey's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the projected terminal values for the companies; (ii) the basis for applying perpetual growth rates ranging from 1.5% to 2.5% and discount rates ranging from 10.0% to 12.0%.

30. In regards to the *Background of the Offer and the Merger*, the Solicitation Statement also omits material information regarding the confidentiality agreement signed with Company, i.e., whether the agreement contained a "don't-ask-don't-waive" provision.

31. In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff will be unable to make a fully-informed decision regarding whether to tender their shares, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for
Violations of Section 14(e) of the Exchange Act**

32. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

33. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order

to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

34. Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

35. The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

36. In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

37. The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the

information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

38. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

39. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT II
### Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder
**(Against All Defendants)**

40. Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

41. Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

42. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

43. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

44. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

45. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT III

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

46. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47. The Individual Defendants acted as controlling persons of Tower within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Tower, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Tower, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Tower, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

50. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and (e), by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

A. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

B. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 19, 2019

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By: */s/ Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

*Attorneys for Plaintiff*